ams

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

NATHANIEL W. ELLIBEE,      )
                                      )
                  Plaintiff,     )
                                        )
        vs.                )     Case No. 03-3463-JAR
                                        )
AUTUMN FOX,               )
                                        )
                  Defendant.   )
_____)

## MEMORANDUM AND ORDER

This matter is before the Court on defendant Autumn L. Fox's Motion for Summary Judgment (Doc. 117) on the remaining state law claims, plaintiff Nathaniel Ellibee's Cross-Motion for Summary Judgment (Doc. 92), and plaintiff's Motion for Change of Trial Location (Doc. 115). As described more fully below, the Court grants defendant's motion for summary judgment and denies plaintiff's cross-motion for summary judgment. Consequently, the Court also denies as moot plaintiff's motion for change of trial location.

### I.  Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1]  A fact is only material under this standard if a dispute over it would effect the outcome of the suit.[2]  An issue is only genuine if it "is such that a reasonable jury could return a verdict

---

[1]Fed. R. Civ. P. 56(c).

[2]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

for the nonmoving party."[3]  The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[4]

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[5]  "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[6]  The burden may be met by showing that there is no evidence to support the nonmoving party's case.[7]  If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[8]  "Where, as here, the parties file cross motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts."[9]  When examining the underlying facts of the case, the Court is cognizant that it may not make credibility determinations or weigh the evidence.[10]

---

[3]*Id.*

[4]*Id.* at 251–52.

[5]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[6]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325).

[7]*Id.*

[8]*Id.* (quoting Fed. R. Civ. P. 56(e)).

[9]*James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997) (citing *Harrison W. Corp. v. Gulf Oil Co.*, 662 F.2d 690, 691–92 (10th Cir. 1981)), *cert. denied*, 523 U.S. 1048 (1998).

[10]*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

Furthermore, the Court must construe pro se pleadings liberally and apply a less stringent standard than what is applicable to attorneys.[11]  However, the Court may not provide additional factual allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[12]  The Court need only accept as true plaintiff's "well-pleaded factual contentions, not his conclusory allegations."[13]

## II.  Undisputed Facts

Plaintiff Nathaniel Ellibee, a state prisoner proceeding pro se, pled guilty to aiding and abetting murder in the second degree, attempted aggravated robbery, and conspiracy to commit aggravated robbery in the District Court of Geary County, Kansas, on February 7, 1992. Plaintiff was represented by counsel Lloyd Graham at the plea hearing, at sentencing, and on appeal.  At the plea hearing, the Honorable George F. Scott asked plaintiff a number of questions before accepting his guilty plea.  Plaintiff responded "Yes, sir," when asked if he had an opportunity to read the amended complaint and discuss it with his attorney, and responded "Yes, sir," when asked if his attorney answered all of his questions about it.  Judge Scott also asked plaintiff  questions to ensure that the plea was freely, voluntarily and intelligently presented. Plaintiff stated on the record that he understood the possible sentences and penalties in the case and never raised a question about the implications of his decision to plead.  Plaintiff was sentenced to a controlling sentence of twenty-one years to life plus twenty-five years.

---

[11]*Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005); *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).  Consequently, the Court declines to strike plaintiff's response as defendant requests, for failure to strictly comply with D. Kan. R. 56.1.

[12]*Whitney*, 113 F.3d at 1173.

[13]*E.g.*, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

3

On September 18, 2001, plaintiff filed pro se a "Petition for Writ of Habeas Corpus Pursuent (sic) to K.S.A. 60-1507," in which he submitted the following grounds for relief: (1) "Judicial Misconduct/Judicial Abuse of Discretion," (2) "Prosecutorial Misconduct/Malitious (sic) Prosecution," and (3) "Ineffective Assistance of Counsel."  In his motion and memorandum in support, plaintiff makes a number of allegations against Judge Scott, the County Attorney, Chris Biggs, and Mr. Graham.  Plaintiff filed a supplemental petition on October 4, 2001 where he added a claim that Geary County officials had held and "extradited" him from Fort Riley, a Kansas military base, in an illegal and unconstitutional manner.

On January 2, 2002, defendant Autumn L. Fox entered her appearance as counsel for plaintiff in the habeas matter.  Defendant wrote plaintiff a letter dated January 3, 2002 as a "follow-up" to a conversation they had on December 31, 2001.  In the letter, defendant set forth the issues that she wished to argue on plaintiff's behalf: (1) ineffective assistance of trial and appellate counsel, and (2) illegal sentence.  Further, defendant memorialized her discussion with plaintiff where they agreed that the other issues he had raised in his habeas motion were not viable because they were either included in the two issues she would address, or they could not be raised due to contrary law.  Defendant stated that plaintiff's billing rate would be $150 per hour and that he had submitted a $1750 retainer.  She told plaintiff that the retainer "will be applied against time spent on your file.  When the retainer is exhausted, you will be required to submit an additional retainer."

In a letter dated January 8, 2002, plaintiff responded to defendant's January 3 letter and stated: "I fully understand, and agree with, limiting and focusing our presentation to the Court." Yet, plaintiff went on to explain concerns he had about issues that defendant did not plan to

4

address on his behalf.  He stated that he believed Judge Scott accepted his guilty plea without a

factual basis, that Mr. Biggs referred to an aggravating factor on appeal that was disallowed by

Judge Scott at his sentencing hearing, and that he was never able to review the contents of his

Presentence Report ("PSR").  Plaintiff concluded the letter by stating, "I trust your judgement in

these matters, if there is no value to these issues, I will understand."

Then, on January 22, 2002, plaintiff wrote a letter to defendant in which he stated, "I am

not comfortable with your desire to waiver issues and elements of issues that I have presented in

my Habeas Corpus filing, as you expressed in your letter dated January 3, 2002."  Plaintiff then

proceeded to set forth directives to the defendant such as "I want  [these claims] clearly and

strongly identified," "Please review [the following cases]," and "I want the following . . . issues

presented to the Court. . . . I am directing you as my attorney to clearly present these six distinct

and separate issues to the Court on my behalf."  Specifically, plaintiff directed defendant to

present the following issues: (1) Judicial Abuse of Discretion, (2) Prosecutorial Misconduct, (3)

Ineffective Assistance of Counsel, (4) Defective Plea, (5) Illegal Arrest/Extradition, Illegal

Search and Seizure, and (6) Miranda Violation.

Defendant responded to plaintiff by letter dated February 12, 2002:

> I can understand, as much as I am able, that my visit and our
> discussion has caused you to be concerned about your
> imprisonment and your case.
>
>         What I will not do, however, is revisit those things that we
> already decided.  In our three hour visit we decided exactly what
> would be raised and why.  I explained to you then—and am
> explaining again—that there is a difference between judicial
> misconduct and abuse of discretion, which is an appellate standard
> of review. . . . The judge is just that, the judge.  He is not obligated
> to do things that your lawyer should do.  There *was no judicial
> misconduct*.  Although the court may have abused its discretion in

5

accepting your plea, that is a separate issue from judicial misconduct.

. . . .

If your wish is to prevail in this matter, you must let me do my job and focus on *this* hearing.  This is not the proper venue to raise issues alleging collusion, etc.  It is important that we keep the legal issues clear.  You have good legal issues.  There is no reason to cloud the issue with accusations of collusion and fraud, which are separate from those legal issues.

. . . .

Nathaniel, you must let me do my job.  I cannot work on your case in a focused manner if you continue to insist that we raise issues that we have previously decided not to raise; if you raise collateral issues regarding the behavior of the lawyers and/or judges in your case; and if you do not trust me.  The decision is yours.  I believe strongly in your case and will work hard at gaining the relief that we seek.  At this point, however, you must decide whether you—or I—will handle this case.  By now you know that I respect you and will listen to you.  You must, however, allow me to do my job, which I will do.  If you want to represent yourself, please let me know.  Otherwise, you must trust me to represent you and your interests.[14]

On April 24, 2002, defendant filed an amended brief in support of the habeas corpus motion on plaintiff's behalf, raising two main arguments: (1) that the amended complaint charging plaintiff with second-degree murder was fatally defective, and (2) ineffective assistance of counsel.  An evidentiary hearing on the motion was held on May 3, 2002.  Geary County District Judge Benjamin Sexton heard the motion and plaintiff appeared in person and by counsel.

The transcript reveals that defendant represented to the court at the beginning of the hearing that there were three issues addressed by the petition: (1) whether the case was properly before the court, (2) whether the complaint was fatally defective, and (3) ineffective assistance of

---

[14](Doc. 118, Ex. 16 (emphasis in original).)

counsel.  At the hearing, evidence was presented about whether plaintiff had waived his *Miranda*

rights after his arrest and defendant called both plaintiff and Graham as witnesses.

At the end of the hearing, the district court found on the record that it had jurisdiction to

hear plaintiff's petition.  The Court then stated:

> Court will find that it has considered each and every
> allegation—and this is important, folks—contained in the
> petitioner's original petition.  The Court will find that those issues
> not argued and evidence not presented on those issues raised in
> that original petition for habeas corpus in September 18th of 2001,
> are waived as if they were brought up.  And the Court will find, as
> a matter of law, that they have not carried the preponderance of
> evidence on those allegations contained therein that have not
> been—evidence has not been presented, and the Court will deny
> relief on that reque—on those requests.[15]

Neither plaintiff nor defendant objected after Judge Sexton made this finding.  The court

proceeded to rule on the remaining claims of defective complaint and ineffective assistance,

finding that "the transcripts set forth exactly what happened. . . . [and] plaintiff has failed in its

[sic] burden to prove this 1507 on the facts set forth and argued on the preponderance of the

evidence, and the Court denies the same in total."  A notice of appeal of this decision was filed

on May 7, 2002.[16]

After the hearing, on May 14, 2002, plaintiff wrote to defendant with an enclosed

affidavit and expressed hope that Judge Sexton would "grant my indigent status, and for you to

be appointed as my appellate counsel."  Plaintiff went on to state in this letter that he could no

longer afford to spend money on legal counsel and as a result, "must; unfortunately, terminate

---

[15](Doc. 118, Ex. 18 at 7.)

[16]The Kansas Court of Appeals affirmed the habeas decision per curium.  Slip Op. No. 89,420 (Kan. Ct.
App. May 16, 2003).

our current retainer agreement."  Plaintiff also offered paralegal assistance to defendant in lieu of

financial payment toward her representation of him.  On May 17, 2002, defendant responded by

letter and informed plaintiff of his obligation to settle the balance owed on his account with her.

She declined plaintiff's offer of paralegal assistance and informed plaintiff that "Judge Sexton

will not approve your indigent status and appoint me as counsel so long as you still have the

funds indicated in your account."  On May 23, 2002, defendant wrote another letter to plaintiff

addressing some of his billing concerns and explained that although Judge Sexton had not ruled

on his application for indigent status, if it is approved, the State would pay for her representation.

Then, on May 28, 2002, plaintiff forwarded to defendant a copy of his pro se Motion for

Reconsideration that he sent to the court for filing.  Defendant responded to plaintiff and

informed him that he may not file motions without consulting her because she was the attorney

of record in the case, stating, "You need to decide if I am representing you or you are

representing yourself.  If you wish to return to Pro Se status, I will withdraw.  The enclosed

notice of withdrawal will be filed with the District Court on June 14th, 2002 if I do not hear from

you in regard to this issue."  Plaintiff replied by letter on June 6, 2002, stating:

> This is the second time that you have threatened to abandon
> my case [See your correspondence dated February 12, 2002], this
> is both unprofessional and without cause. . . . I submitted the
> motion for reconsideration in a Pro Se capacity due to the fact that
> I TERMINATED OUR PRIOR EXISTING RETAINER
> AGREEMENT IN CORRESPONDENCE TO YOU DATED
> MAY 14, 2002.  I did not; and do not, wish to incur any further fee
> obligations to you on or after May 14, 2002.[17]

Plaintiff went on to explain to defendant that he filed the pro se motion because he felt that he

---

[17](Doc. 118, Ex. 23 at 1 (emphasis in original)).

8

was not represented at the time, nor could he afford to pay defendant to draft the motion.  In this June 6 letter, plaintiff emphatically expressed his frustration with the results of the habeas action, and "other concerns I have previously chosen not to express to you," including his repeated concern about defendant not raising judicial and prosecutorial misconduct in the amended habeas brief.  Plaintiff also made reference to a number of claims for which he contended he had provided defendant with "clear factual proof" of.   Additionally, plaintiff complained that he was billed for services that he never authorized or that were unjustified uses of time.  Plaintiff further asked defendant to "reconsider filing the proposed motion to withdraw . . . as it is not factually accurate.  If I don't hear from you in regards to this letter by Monday, June 17, 2002, I will assume that you have filed the proposed motion to withdraw; and I will pursue an appropriate remedy."

On June 24, 2002, defendant filed a motion to withdraw from the habeas matter.  The motion represents to the court that "plaintiff insists on filing pro se motions without the undersigned's knowledge while the undersigned is the attorney of record" and that she "has contacted the plaintiff in regards to her concerns of pro se motions by the plaintiff," but that he "reaffirms his intentions to continue with the pro se motions."  On the same day, plaintiff entered his "appearance as counsel of record" in the case.  Plaintiff also filed an "Objection" to defendant's motion to withdraw and proposed Journal Entry for the May 3, 2002 hearing.  In the Objection, plaintiff claims that defendant's representations in the motion to withdraw are false and that the proposed journal entry was improper because (1) it contained factual inaccuracies, (2) defendant had no authority conferred either by the court or by him to draft the journal entry; and (3) his research uncovered that the district court's failure to make findings on all issues

presented at the habeas hearing violated his Sixth Amendment right of access to the courts and Fourteenth Amendment right to due process.

The district court held a hearing on plaintiff's motions on July 26, 2002.  During that hearing, both plaintiff and defendant appeared, and plaintiff represented to the court that he no longer wished for defendant to work on his case.  Further, plaintiff argued that defendant improperly waived those claims asserted in his original habeas motion at the May 3 hearing, contrary to his stated wishes.  The Court allowed defendant to withdraw from the case and denied plaintiff's Motion for Reconsideration.  The Court reaffirmed its May 3 decision and found that he was unable to show those issues not raised at the hearing by a preponderance of the evidence.  The Journal Entry, signed by Judge Sexton and filed on July 22, 2002, was recorded on August 1, 2002.

## III. Discussion

Plaintiff asserts the following claims in the Pretrial Order: Fraud, Negligence, Breach of Duty, Breach of Contract, and Malpractice.  Under Kansas law, legal malpractice generally constitutes both a tort and a breach of contract.[18]  "Where the malpractice involves failure to perform a contractual obligation, whether express or implied, the cause of action is in contract."[19]  But when "the gravamen of the action is a breach of a duty imposed by law upon the relationship of attorney/client and not of the contract itself, the action is in tort."[20]  Plaintiff makes various claims of legal malpractice against defendant, but asserts causes of action in both

---

[18]*See, e.g.*, *Turner & Boisseau v. Nationwide Mut. Ins. Co.*, 989 F. Supp. 1359, 1362 (D. Kan. 1997).

[19]*Pittman v. McDowell, Rice & Smith, Chartered*, 752 P.2d 711, 718 (Kan. Ct. App. 1988) (internal citations omitted).

[20]*Id.*

tort and contract, in addition to fraud.  The Court liberally construes plaintiff's Amended Complaint and attempts to evaluate all of his claims as they relate to essential elements of his claims.

### A. Tort Claims: Negligence, Breach of Duty, Malpractice

In order to prevail on a legal malpractice claim, plaintiff must show (1) the duty of the attorney to exercise ordinary skill and knowledge, (2) a breach of that duty, (3) a causal connection between the breach of duty and the resulting injury, and (4) actual loss or damage.[21] In addition, "to prove legal malpractice in the handling of litigation, a plaintiff must establish the validity of the underlying claim by showing that it would have resulted in a favorable judgment in the underlying lawsuit had it not been for the attorney's error."[22]  This requires plaintiff to prove three additional elements: (1) the underlying claim is valid, (2) he would have received a favorable judgment but for the attorney's error, and (3) the judgment was "collectible."[23]

"'[C]laims of legal malpractice, like other forms of malpractice, are normally to be determined by the trier of fact rather than by summary judgment.'"[24]  There is a recognized exception to this rule, however, when under the totality of the circumstances, as shown by the uncontroverted facts, "a conclusion may be reached as a matter of law that negligence has not been established."[25]

---

[21]*Bergstrom v. Noah*, 974 P.2d 531, 553 (Kan. 1999) (citing *Hunt v. Dresie*, 740 P.2d 1046 (1987)).

[22]*Canaan v. Bartee*, 72 P.3d 911, 915 (Kan. 2003), *cert. denied*, 540 U.S. 1090 (2003); *Webb v. Pomeroy*, 655 P.2d 465, 467–68 (Kan. Ct. App. 1982).

[23]*Webb*, 655 P.2d at 468 (citing Meisleman, Attorney Malpractice: Law and Procedure § 3:5 at 44 (1980)); *see also Augustine v. Adams*, No. 95-2489-GTV, 1997 WL 298451 (D. Kan. May 2, 1997).

[24]*Bergstrom*, 974 P.2d at 554 (quoting *Hunt*, 740 P.2d at 1046).

[25]*Id.*; *see also Ybarra v. Swanson*, No. 02-1368-WEB, 2003 WL 21939022, at *2 (D. Kan. July 21, 2003).

Plaintiff argues in his cross-motion that he asserts in "good faith" that his habeas claims that were waived would have been determined on the merits.  Plaintiff urges the Court to adopt the "loss-of-chance doctrine" in this legal malpractice action and recognize that the mere failure of the Geary County District Court to consider the waived claims is enough to prove that plaintiff would have received a favorable judgment "but for" defendant's alleged error.

The Court declines plaintiff's invitation to consider the loss-of-chance doctrine under these circumstances.  In Kansas, the only type of malpractice claims that the loss-of-chance doctrine has been applied to is medical malpractice.  In those cases, the plaintiff must suffer a loss of chance of recovery due to the medical malpractice.[26]  The Court is unable to locate any *legal* malpractice action in Kansas that has applied this doctrine.  In fact, the Kansas Supreme Court has explained why the loss-of-chance doctrine in medical malpractice cases does not translate to an injury in the legal malpractice context for public policy reasons, and because "all attorneys are subject to disciplinary rules that require them to represent their clients in a diligent and competent manner."[27]

Instead, as articulated above, plaintiff must show that his waived claims were valid and that he would have received a favorable judgment but for defendant waiving them.  The Court finds that plaintiff fails to meet his burden on these points as a matter of law.  The three general arguments made in his pro se habeas motions that defendant waived were: (1) judicial misconduct/judicial abuse of discretion; (2) prosecutorial misconduct; and (3) illegal extradition from Fort Riley.  Plaintiff does not meet his burden of showing that these are valid claims, nor

---

[26]*See, e.g.*, *Delaney v. Cade*, 873 P.2d 175, 178 (Kan. 1994).

[27]*Canaan*, 72 P.3d at 918–19.

can he establish that he would have received a favorable judgment in the underlying habeas action but for the claims being waived.  The mere fact that they were not ruled upon on the merits is an insufficient showing for a legal malpractice claim.

**Judicial Misconduct Claims**

Plaintiff argued that Judge Scott should have recused himself under K.S.A. § 22-2301 from presiding over his criminal case, and that Judge Scott failed to ever conduct a hearing to ensure that plaintiff's confession was properly obtained pursuant to K.S.A. § 60-460.  None of the authority cited by plaintiff in his habeas motion support his contentions.  K.S.A. § 22-2301 does not disallow a district judge to preside over a criminal case in which he signed an arrest warrant for the defendant.  That section merely speaks to how a criminal prosecution is initiated.  A judge "order[ing] the county attorney to institute criminal proceedings" is not the equivalent of signing an arrest warrant.  It is simply a way, "in *extreme* cases," by which a judge may commence a prosecution without utilizing a complaint.[28]  Further, plaintiff's argument about Judge Scott's duty to ensure his confession was properly obtained is invalid.  K.S.A. § 60-460 deals with the exception to the exclusion of hearsay evidence when the statement is a previous statement by the accused in a criminal proceeding.  The judicial findings referenced in that statute are not necessary in the context of every case that involves a confession.  Here, defendant pled guilty and, based on the record before this Court, the use of hearsay evidence was never an issue.

Plaintiff further argued that he suffered double jeopardy because the County Attorney, Chris Biggs, "filed multiplititious (sic) charges against me."  He alleged that Judge Scott should

---

[28]K.S.A. § 22-2301 (emphasis added)).

have advised him of the elements of the charges against him and that there was a proper factual basis for the plea.  He stated that because he was only nineteen years old at the time, Judge Scott should "have full knowledge that I was fundamentally unable to judge my counsels performance."  He alleged that the district court failed to inquire of his awareness of the jury trial rights that he would waive by pleading guilty and failed to ensure that he understood the possible punishment.

Again, plaintiff misapprehends the law on this matter.  For example, he heavily relied on and quoted *Noble v. State*[29] for his contention that Judge Scott failed to fully satisfy his duty to ensure that plaintiff's plea was knowing and voluntary and that he understood the charges against him and the potential sentence.  But that case concludes that even though the court did not state on the record that there was a factual basis for the plea, the fact that the petitioner had a copy of the information, which set forth the facts and elements of the crimes charged, was sufficient.   The Court finds that the factual basis for the plea, as recited by Mr. Biggs at the plea hearing, was sufficient on its face.  The transcript from the plea hearing reveals that Judge Scott complied with the requirements in K.S.A. § 22-3203 for accepting a guilty plea and that there was no judicial misconduct or "abuse of discretion."[30]  Further, the transcript reveals that plaintiff was provided with a copy of the amended complaint and that he waived the reading of the amended complaint on the record.  Judge Scott asked plaintiff if he "wish[ed]—are you satisfied that you have an accurate copy of the charges against you?" and he replied, "Yes, sir."

---

[29]727 P.2d 473 (Kan. 1986).

[30]As defendant Fox repeatedly tried to convey to plaintiff during their attorney-client relationship, there is no such claim as "judicial abuse of discretion."  Abuse of discretion is a standard the appeals court uses to determine the merits of certain issues on appeal that are committed to the discretion of the trial court.

Finally, plaintiff argued he was never afforded an opportunity to review his PSR and that Judge Scott should have ensured that he received a copy and had time to review it prior to sentencing.  Plaintiff contended that there are factual inaccuracies in the report that prevented the application of certain mitigating factors on his behalf at sentencing.  Again, the sentencing transcript belies plaintiff's contentions on this matter, as well as the fact that he was denied allocution.  Mr. Graham stated at sentencing that "Mr. Ellibee has asked me to advise the Court that he did make a written statement to court services, which is in the court report and he does not wish to make a statement today.  I advised him of his right to do so and he's asked that I speak on his behalf."  The district court, however, had no duty to ensure that plaintiff had reviewed the presentence report.[31]  Further, plaintiff made no showing in his petition that a more "indepth" PSR would have resulted in a different sentence.[32]  The Court finds there is no genuine issue of material fact on this issue because plaintiff's claims of judicial misconduct were wholly without merit and he had no chance of receiving a favorable judgment on this claim.

### Prosecutorial Misconduct Claims

Likewise, plaintiff misapprehends the validity of his claims of prosecutorial misconduct. Plaintiff argued that Mr. Biggs violated the terms of the plea agreement by not being "open as to sentencing" as he represented he would be at the plea hearing.  Instead, plaintiff argued Mr. Biggs presented an argument in favor of a maximum consecutive sentence at the sentencing

---

[31]*See* K.S.A. § 21-4714 (providing that the presentence report becomes part of the court record except that the official version, that includes confidential information, may only be provided to the parties, the Judge and certain other state agencies involved with sentencing).

[32]To the extent plaintiff claims his counsel was ineffective for failing to allow him to review the PSR, that claim was not waived by the amended habeas petition.  That claim was included in plaintiff's ineffective assistance of counsel claim that was ruled upon.

hearing.  Plaintiff further argued that Mr. Biggs falsely represented his confession and presented facts surrounding the underlying crime in a manner that was prejudicial to him.  Finally, plaintiff made an equal protection argument, suggesting that it was unfair that he be prosecuted when Mr. Biggs declined to pursue criminal charges against two unaffiliated individuals who plaintiff claims had stolen money from him.

With regard to any sentencing promise made by Mr. Biggs, "[t]he purpose of a plea agreement is not to guarantee that the lower sentencing levels will be applied, but rather to set out parameters within which an appellant understands he will be sentenced."[33]  During the plea hearing, plaintiff recited to Judge Scott the penalties associated with all three charges he pled guilty to.  Judge Scott also explicitly ensured that plaintiff understood that he could be sentenced concurrently or consecutively on those charges.  Plaintiff also affirmatively represented to the district court that there was no agreement between him and his attorney about the recommended sentence and that he understood that such an agreement would not be binding on the court.

Further, none of plaintiff's allegations of prosecutorial misconduct relate to his decision to plead guilty in this matter and his equal protection argument would not have been considered a valid claim.[34]  There is no genuine issue of material fact about whether plaintiff established a valid claim of prosecutorial misconduct that would have produced a favorable outcome had it not been waived.

**Extradition Claim**

---

[33]*United States v. Gines*, 964 F.2d 972, 979 (10th Cir. 1992).

[34]Further, to the extent plaintiff asserts he had a double jeopardy claim and that the factual basis was invalid, those issues were not waived, as defendant zealously argued in the amended brief that the amended complaint was defective.

16

Finally, plaintiff alleges defendant waived his argument that he had been extradited illegally from the Fort Riley military base.  He maintained in his supplemental habeas brief that the arrest warrant, signed by Judge Scott, stated that plaintiff was an active-duty United States Military Service member and that he was located on the Fort Riley Military Reservation. Plaintiff argued that Mr. Biggs failed to obtain the proper documentation for plaintiff's extradition from the military base.  K.S.A. § 22-2701 defines "State," for the purposes of the Uniform Criminal Extradition Act, as "a state other than this state, includes any other state or territory, organized or unorganized, of the United States of America."  Plaintiff argued that Fort Riley constitutes a different "State" within the meaning of K.S.A. sections 22-2723 and 22-2722. Plaintiff provided no legal authority for this interpretation, nor does any such authority exist.[35] The Court finds that there is no genuine issue of material fact concerning whether plaintiff's extradition argument was a valid claim that would have produced a favorable judgment in the habeas matter had it not been waived.

Defendant properly advised plaintiff of the pitfalls of pursuing the above-mentioned claims in his habeas action.  She properly gave him the choice between taking her advice as counsel, or disregarding her advice and proceeding pro se.  Plaintiff operated with full knowledge of the course of conduct defendant wished to take on his behalf and may not now second-guess that advice.  Even if the Court were to find that plaintiff's waived arguments were valid, and likely to produce a favorable outcome, the Court would find that the uncontroverted

---

[35]Plaintiff repeatedly refers in his briefs, and attachments thereto, to the length of his various habeas papers and exhibits, suggesting that this alone makes them meritorious.  The Court rejects the notion that form over substance should prevail in its analysis of the validity of those claims and finds that the substance of those briefs were not sufficient to establish that he would have received a favorable judgement but for defendant's alleged malpractice.

facts show that defendant did not breach a duty owed to plaintiff as a matter of law.[36]

### B.  Breach of Contract and Fraud Claims

Plaintiff does not clearly state in his response/cross-motion for summary judgment, which specific allegations form the basis of his fraud and breach of contract claims.  Also, the Pretrial Order conflates all of the state law claims.  Plaintiff alleges defendant breached a contract for "specific performance."  Plaintiff alleges "fraudulent billing" by defendant for her legal work on his behalf before she withdrew from his case.  Specifically, plaintiff contends that many of the charges on the bills he received were either (1) not authorized by him, (2) amounted to double-billing, or (3) were charges that accrued after he terminated the attorney-client relationship.  Plaintiff further alleges various misrepresentations made by defendant: (1) that his original habeas claims would not be waived by her amended brief; (2) that the arguments raised in plaintiff's habeas motion were not supported by law, and (3) that she researched his claims when in fact she did not.

In order to establish a breach of contract, plaintiff must prove: (1) the existence of a contract between the parties; (2) consideration; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) defendant's breach of the contract; and (5) that plaintiff was damaged by the breach.[37]  To show fraud, plaintiff must show: (1) an untrue statement of fact; (2) known to be untrue by the party making it; (3) made with the intent to deceive or with reckless disregard for the truth; (4) upon which another party justifiably relies;

---

[36]*See* Kan. S. Ct. R. 226, Kan. R. Prof. Conduct R. 1.2 cmt. ("a lawyer is not required to pursue objectives or employ means simply because a client may wish that the lawyer do so. . . .").

[37]*E.g.*, *Britvic Soft Drinks, Ltd. v. ACSIS Techs., Inc.*, 265 F. Supp. 2d 1179, 1187 (D. Kan. 2003).

and (5) acts to his detriment.[38]          **Billing Arguments**

Plaintiff alleges that defendant breached a contract for specific performance by allowing his habeas claims to be waived.  First, the Court finds that plaintiff completely misapprehends the function of specific performance in contract law.  It is a remedy, not a cause of action or something that may be breached.  Second, as already described, plaintiff suffered no damage from the alleged breach because his claims were not valid and would not have been ruled upon favorably even if not waived.

Next, plaintiff alleges that defendant "fraudulently" billed him for certain services. These bill entries do not rise to the level of fraud.  First, all charges billed to plaintiff occurred before she withdrew from his case on July 26, 2002.  There was some obvious ambiguity in the correspondence between plaintiff and defendant about whether or not she was to remain his counsel in the habeas case after his letter dated May 14, 2002.  Although plaintiff did say that he was terminating their retainer agreement, plaintiff asked that she be appointed by the court to continue on, or to allow him to conduct paralegal work for her in lieu of payment.  This was not an unequivocal termination of her representation, especially considering plaintiff's subsequent correspondence accusing defendant of trying to "abandon" his case and asking her to reconsider filing a motion to withdraw.  Also, defendant wrote plaintiff a letter on May 23, 2002, letting him know that she had submitted a financial affidavit to Judge Sexton in order to apply for plaintiff to receive indigent status, which would allow for the state to pay defendant's fees.  The mere fact that the application was apparently denied does not excuse plaintiff's obligation to pay his fees.

---

[38]*E.g.*, *Alires v. McGehee*, 85 P.3d 1191, 1195 (Kan. 2004); *Crandall v. Grbic*, 138 P.3d 365, 375 (Kan. Ct. App. 2006).

Although the Court has no doubt that plaintiff truly believed he was acting in his own best interest and saving money by filing his motion for reconsideration pro se, he did so before defendant had withdrawn from the case.  As defendant clearly represented in her letter after he sent her a copy of this motion, he needed to decide whether she was to represent him or whether he wished to return to pro se status.  The district court did not allow plaintiff to withdraw her representation until the hearing on July 26, 2002 and plaintiff was not charged for any services after this date.

The Court also finds that there was no fraudulent statement involved in what plaintiff alleges was "double-billing" and unauthorized research by defendant.  All of plaintiff's issues with his billing statements are easily explained and fail to reflect anything beyond reasonable billing practices by defendant.  First, he points to a charge for 3.4 hours of research on the Kansas Sentencing Guidelines ("Guidelines") on January 10, 2002.  He claims that this was not an issue he had raised in his habeas motion.  But he did argue that his sentence was illegal, and that he should not have received a consecutive sentence, issues addressed by the Guidelines. This particular issue was addressed in the amended motion that defendant drafted and was a perfectly suitable area of research for her on plaintiff's behalf.

Plaintiff argues he was fraudulently billed for time on January 2, 2002 for a hearing that is not reflected on the docket sheet.  But plaintiff does not look at the entire entry, which states: "Draft entry of appearance.  Brief hearing in front of Judge Sexon (sic) re: dismissing transport order.  Call to Geary County Sheriff and County Attorney re: dismiss transport order."  The docket sheet reveals that on November 2, 2001, a transportation order was entered for plaintiff to be brought to the Geary County district court for a hearing originally set for January 4, 2002,

before defendant entered her appearance in the matter.  The docket entry also shows that the transport order was recalled on January 3, 2002.  This entry clearly supports the time defendant spent on cancelling that transportation order with Judge Sexton, the Geary County Attorney, and the Geary County Sheriff's Office.  There is no evidence to support that this billing entry was a fabrication.

Plaintiff accuses defendant of double-billing him for time spent drafting the amended habeas petition.  To support this claim, he points the Court to the billing entry on March 12, 2002 for 2.9 hours and on March 14, 2002 for 6.2 hours.  But these are not entries for the same work, as they are not for the same amount of time.  Further, defendant submitted an affidavit attesting that she spent over nine hours drafting the amended brief.  The Court sees no evidence that controverts this contention other than plaintiff's conclusory statement that if it is listed twice, it must constitute a double-billing.

Plaintiff argues that he was billed for drafting a motion to continue on March 18, 2002 for .6 hours, but that the motion was never filed.  But this could easily refer to a motion to continue that was filed on March 15, according to the docket sheet and not otherwise reflected on the billing statements.  Plaintiff contests a "hearing in chambers re: new hearing date" charge for .4 hours because there is no hearing reflected on the docket sheet.  But this "hearing" was in chambers and merely done to set a new hearing date, an event that is not normally entered as a docket entry in the court system.

Plaintiff argues that he never authorized defendant to travel to Topeka on April 17, 2002 to conduct research at the Kansas Historical Society, for which she billed for 5.2 hours.  He points to a letter he received from the Kansas Historical Society representing that they will

21

conduct requested research for their patrons, arguing that defendant misrepresented her time on that day.  This does not constitute any type of fraudulent statement.  Defendant states she traveled from her office in Abilene to Topeka to conduct this research.  Even if the staff at the Kansas Historical Society will "search for very specific information when we have a name or date of an event and it requires no more than 30 minutes of research," the letter plaintiff references states that their staff does not search for people who need to conduct extensive research.  Plaintiff fails to show evidence that defendant did not spend 5.2 hours driving back and forth from Abilene and conducting, or at least waiting on, research on his behalf.

Plaintiff argues that he was billed twice for services rendered in March 2002.  Although both bill statements show the same charges, the second bill statement was sent to reflect payment made from plaintiff's client trust account.  On the second statement, the amount due is shown as "$0.00" while on the first statement it is shown as "$2,280.25."  Plaintiff's claims of double-billing on this point are without merit.

The only possibly valid misrepresentation in billing concerns plaintiff's complaint that he was charged for defendant to discuss his sealed file with the clerk of the court in Junction City for 2.1 hours, but that defendant stated in a letter to him explaining, "I did not charge for travel to and from Junction City to meet with you and discussion with the clerk of the court on 4/19/02."  Even if this constitutes a misrepresentation, there is no evidence that defendant knew the statement to be untrue.  Indeed, this entry runs over two pages of the bill.  The first page shows an entry for "Travel to and from Junction City . . . .  NO CHARGE FOR ALL."  The second page, however, continues, "CONVERSATIONS RELATING TO STATE'S REQUEST FOR CONTINUANCE.  NO CHARGE FOR HAVING TO ATTEND BRIEF PHONE

CONFERENCE WITH JUDGE SEXTON AND JOHN TAYLOR," and shows a charge for 2.1 hours, resulting in $315.  Again, there is no evidence that defendant knew this statement to be untrue or that she intended to deceive him.  The letter from the Clerk's Office does not support plaintiff's allegation that defendant lied about speaking to the Clerk's Office in regard to his file.  It merely states that plaintiff was not denied access to his files and states that there is some confusion over files located at the County Attorney's office, and those in the Court file.

**Other Alleged Misrepresentations**

Plaintiff further argues that defendant committed fraud by misrepresenting to him that his claims of judicial misconduct, prosecutorial misconduct, and extradition were unfounded and that she had not waived his issues in her brief.   There is no genuine issue of material fact over either one of these claims.  As the Court has already discussed above, plaintiff's original habeas claims were unfounded and would not have been meritorious had they not been waived.  Plaintiff makes much of the fact that there is no billing statements for legal research on these areas of law.  The Court is not persuaded by this observation, as these are contentions that are within the common knowledge of seasoned criminal defense lawyers.  Therefore, these were not false representations, made with intent to deceive that plaintiff relied upon to his detriment.

Further, defendant's statement that she had not waived his claims are taken out of context.  Plaintiff refers to Plaintiff's Exhibit 10, in which defendant told plaintiff that "I researched extensively regarding your sentence.  I simply could not reach the conclusion that your consecutive sentences were illegal.  This issue is not waived by my brief, so if you want me to raise it at the hearing, I can."  First, this statement is clearly referring only to plaintiff's contention that his sentence was illegal, not to the other waived claims.  Also, defendant's

statement is not an inaccurate statement of fact, as the issue is tied to the ineffective assistance of counsel claim.  Further, the issue of whether his sentence was illegal on the merits is not an issue that was even addressed in his original habeas petition, nor in his letter of January 22, 2002 directing defendant to address certain specific issues in her brief.

Finally, plaintiff could not have relied upon any of plaintiff's alleged misrepresentations about his waived claims because the Court held on the record, in his presence, that they were waived at the May 3, 2002 hearing.[39]  Nor did plaintiff suffer any detriment as a result of the claims being waived, as the Court has already held that they would not have been successful.

In conclusion, this is a case in which the plaintiff fundamentally misunderstands the nature of the attorney-client relationship, most of the legal authority that he cites, and the probabilities for his arguments' success in litigation.  Plaintiff is clearly disappointed by the outcome of his habeas matter and seeks to recover for, what he perceives to be, the failure of his counsel to follow his instructions in that case.  Unfortunately for plaintiff, the record conclusively reveals that his attorney advocated for him in a highly professional and zealous manner, despite his mixed signals and directives.  None of the allegations brought by plaintiff in his Amended Complaint rise to the level of malpractice, fraud, or breach of contract and there is no genuine issue of material fact that could lead a reasonable jury to find in his favor.

---

[39]Plaintiff makes much out of the reference in the Journal Entry for the May 3, 2002 hearing to a previous hearing where defendant explained in detail to the court the chain of correspondence between plaintiff and defendant leading to the decision to only assert the three claims raised in the amended habeas brief.  He contends that no previous hearing is reflected on the docket sheet.  The Court does not find this dispositive, as the May 3 hearing transcript clearly shows that plaintiff was appraised of the fact that his arguments not raised in the amended brief were waived.

Also, to the extent plaintiff alleges some claim for defendant's unauthorized drafting of the journal entries in his case, the Court directs him to the Kansas Supreme Court Rules Relating to District Courts.  Rule 170 explicitly requires counsel to prepare journal entries and submit them to the judge for approval.

24

A motion for reconsideration under D. Kan. R. 7.3 is not encouraged.  The standards for these motions are well-established and are only appropriate when the Court has clearly misapprehended a party's position or fact or applicable law, or when new evidence is obtained that could not have been previously obtained through the exercise of reasonable diligence.  Such a motion does not permit a losing party to rehash arguments previously addressed or to present new legal theories or facts that could have been raised earlier.[40]   Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by the Tenth Circuit for motions for reconsideration.  Likewise, any response necessitated by a motion for reconsideration is limited to three pages.  No reply may be filed.

**IT IS THEREFORE ORDERED BY THE COURT THAT**:

(1)  defendant Fox's Motion for Summary Judgment (Doc. 117) is granted,

(2)  plaintiff's Cross-Motion for Summary Judgment (Doc. 92) is denied, and

(3)  plaintiff's Motion for Change of Trial Location (Doc. 115) is denied as moot.

**IT IS SO ORDERED**.

Dated this _28th___ day of September 2006.

 S/ Julie A. Robinson_____
Julie A. Robinson
United States District Judge

---

[40]*Brown v. Presbyterian Healthcare Servs.,* 101 F.3d 1324, 1332 (10th Cir. 1996), *cert. denied sub. nom., Miller v. Brown*, 520 U.S. 1181 (1997).

25